James **MITCHELL**, Petitioner,

v.

Raymond **ANDREWS**, Warden, Respondent.

No. CVF9955510WWHGBP.

United States District Court, E.D. California.

March 29, 2001.

---

Eric Kersten, Fed. Defender's Office, Fresno, CA, for petitioner.

Carl M. Faller, Jr., U.S. Attorney's Office, Fresno, CA, for respondents.

## ORDER RE: FINDINGS & RECOMMENDATIONS
### (# 30)

WANGER, District Judge.

Petitioner, a federal prisoner, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72–302.

On May 15, 2000, the Magistrate Judge filed findings and recommendations herein which were served on the parties and which contained notice to the parties that any objections to the findings and recommendations were to be filed within fifteen (15) days. No objections to the findings and recommendations have been filed.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73–305, this court has conducted a *de novo* review of this case. Having carefully reviewed the entire file, the court finds the findings and recommendations to be supported by the record and proper analysis.

Accordingly, THE COURT HEREBY ORDERS that:

1. The Findings and Recommendations issued by the Magistrate Judge on May 15, 2000, are adopted in full; and

2. Petitioner's application for a writ of habeas corpus is GRANTED and this case is remanded to the Bureau of Prisons for reconsideration of petitioner's eligibility to the Residential Drug Abuse Program in light of the views expressed in the May 15, 2000, recommendation.

## FINDINGS AND RECOMMENDATION RE: PETITION FOR WRIT OF HABEAS CORPUS

BEST, United States Magistrate Judge.

Petitioner is a federal prisoner represented by the Federal Defender proceeding with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

### BACKGROUND

Petitioner is currently in the custody of the Federal Bureau of Prisons (BOP) confined at the Taft Correctional Institution (TCI) serving a term of 120 months for aviation smuggling and failure to appear. His projected release date is approximately December 17, 2001.

The instant petition was filed on April 23, 1999, by petitioner acting in propria persona. On December 10, 1999, the Federal Defender was appointed to represent petitioner and on February 11, 2000, filed an amended memorandum in support of the petition. Petitioner seeks an order compelling the BOP to grant him eligibility to participate in the 500–hour Residential Drug Abuse Program (RDAP). This court has subject matter jurisdiction under 28 U.S.C. §§ 2241(a), (c)(3), and 1331. *Downey v. Crabtree*, 100 F.3d 662, 663 (9th Cir.1996).

Respondent's response was filed on March 13, 2000, and concedes that peti-

tioner has exhausted his administrative remedies.

Petitioner's traverse was filed on March 30, 2000.

### DISCUSSION

Upon petitioner's transfer to TCI in May of 1998 he applied to participate in the RDAP. On August 28, 1998, petitioner was interviewed by Substance Abuse Counselor Michael A. Angelo for eligibility for the RDAP. At the time of the interview, petitioner completed a questionnaire indicating that in the last period of 12 consecutive months on the street he used alcohol on a daily basis, marijuana more than once a week, and cocaine more than once a week; he also signed the following:

"INMATE'S PROBLEM STATEMENT"

"I have been interviewed to determine my eligibility to admission to a residential drug abuse treatment program in the Federal Bureau of Prisons. During the interview I have given 'truthful' answers to all questions. I had an alcohol or drug use problem during the last period of 12 consecutive months in which I was in the community, and I am now seeking treatment for that problem." See Exhibit "F" to Amended Memorandum [1].

Mr. Angelo's diagnostic impression was "Substance abuse or dependence," specifically "Alcohol Dependence," "Canabis Abuse," and "Polysubstance Dependence." Dr. Austin Carpenter, the Drug Abuse Treatment Coordinator at TCI, signed off on Mr. Angelo's diagnostic impressions. *Id.*

Petitioner alleges he was advised by Mr. Angelo that if he completed a 140–hour non-residential drug program he was "guaranteed" placement in the RDAP as soon as he was 36 months from his release date. However, in a memo dated December 4, 1998, Mr. Angelo advised petitioner that "THE DECISION ABOUT YOUR RDAP ELIGIBILITY IS NOT UP TO ME OR WITHIN THE POWERS OF MY POSITION AS SUBSTANCE ABUSE COUNSELOR." See Exhibit "A" to respondent's response ( answer).

On December 10, 1998, petitioner successfully completed the 140–hour non-residential drug program. Pet's Exh. "E".

In a memo dated March 9, 1999, William T. Bickart, Ph.D., Regional Drug Abuse Coordinator for the BOP, advised petitioner that he was ineligible for the RDAP, stating the reason as being "a lack of professional and substantial documentation indicating a history of dependency, and/or abuse exists for the 12 month period prior to his arrest and during the period he was a fugitive."

Petitioner's administrative appeals, through the Regional Directors level, were denied. Regional Director Peter M. Carlson noted that the Drug Abuse Program Manual, Program Statement (P.S.) 5330.10 states that to qualify for the RDAP, an inmate must be diagnosed according to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM–IV) issued by the American Psychiatric Association. Director Carlson further stated that "to meet the diagnostic criteria for a substance abuse or dependency disorder clinically significant symptoms must be in evidence in the 12 months preceding the diagnostic interview. Because many inmates are incarcerated during the 12 months prior to the diagnostic interview, the Bureau of Prisons expands this 12–month period to include the 12 months

---

**1.** Exhibits attached to petitioner's Amended Memorandum in Support of Petition will hereinafter be identified as (Pet's Exh.).

preceding the inmate's arrest on the instant offense." Pet's Exh. "J."

Respondent acknowledges that petitioner "appears to be qualified to participate in the RDAP in all respects, save for satisfactory documentation of a drug abuse problem within the 12 months prior to his incarceration." Respondent's response (answer), p. 5.

Petitioner contends, "There is no requirement in either the DSM–4, or any written BOP rule or policy statement, that the documented substance abuse must have occurred in the 12–month period immediately preceding Mr. Mitchell's arrest."

Apparently conceding there is no such requirement, respondent contends, "BOP's practice and policy of reviewing the twelve month period prior to arrest is well within its discretion." Answer, P. 5. In support of this contention, the BOP submits the declaration of William T. Bickart, Ph.D., who states in part:

5. BOP policy concerning admission into the RDAP is described in Program Statement 5330.10, with Change Notice–01, dated May 17, 1995 (P.S. 5330.10). Specifically, Chapter 5 of P.S. 5330.10 states that an inmate must have a "verifiable documented drug abuse problem." It further states that "[a]ny written documentation in the inmate's central file which indicates that the inmate used the same substance, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem." This policy provision was clarified on October 21, 1996, by memorandum from Beth Weinman, National RDAP Coordinator, which outlines the standard of documentation required to verify a diagnosis of alcohol abuse/dependence. This memorandum states that an alcohol abuse/dependence diagnosis requires verification by "evidence from documentation in the Central File, or other formal documen-

tation, that the inmate had a 'problem' with the same substance." A true and correct copy of this memorandum is attached hereto as Exhibit 1. As a result, when applying applicable BOP policy to review candidates for the RDAP, RDAP Coordinators place persuasive weight on information received from sources such as a presentence report or a physician's report, over information which may be biased, such as self-reporting or letters from friends or family.

BOP policy in P.S. 5330.10, Chapter 5, also provides that the diagnostic criteria for substance abuse or dependence are derived from the Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edition, (DSM–IV). DSM–IV focuses the evaluation of symptoms/events during the twelve month period preceding the time of the diagnostic interview. By practice in a corrections context, the BOP established the uniform practice of reviewing the twelve month period prior to the inmate's arrest, which generally represents the last period of time that the inmate had an opportunity for substance abuse/dependence. If an inmate had a verifiable substance abuse/dependence problem during this period, then he would have a clinically significant need for admission into the RDAP.

Declaration of William T. Bickart attached to respondent's answer, pp. 2–3.

Dr. Bickart further states that he is familiar with petitioner and recalls that Dr. Austin Carpenter sought his guidance concerning the evaluation of petitioner.

After reviewing all related documents, including the presentence investigation and numerous letters from inmate Mitchell's family and friends, I supported the determination that there was no verifiable alcohol abuse problem during the twelve month period prior to his

arrest. In my professional opinion, application of BOP policy and practice provided a fair result given the fact inmate Mitchell has demonstrated the ability to avoid abuse/dependence for an extended period of time (which includes the evaluated twelve month period prior to his arrest), such that his particular situation does not require admission into the RDAP.

*Id.,* at p. 4.

The memorandum of Regional Drug Abuse Program Coordinator Beth Weinman, referred to by Dr. Carpenter, is attached to his declaration. It is dated October 21, 1996, and reads in part:

"DOCUMENTATION OF SUBSTANCE ABUSE OR DEPENDENCE IS REQUIRED FOR EVERY INMATE ENTERING A RESIDENTIAL PROGRAM. THIS DOCUMENTATION INCLUDES BOTH:

A. AN ELIGIBILITY INTERVIEW THAT LEADS TO A DIAGNOSTIC IMPRESSION OF ALCOHOL OR OTHER 'LEGAL' SUBSTANCE ABUSE/DEPENDENCE DURING THE LAST 12 MONTHS PRIOR TO ARREST AND/OR INCARCERATION; AND

B. EVIDENCE FROM DOCUMENTATION IN THE CENTRAL FILE, OR OTHER FORMAL DOCUMENTATION, THAT THE INMATE HAD A 'PROBLEM' WITH THE SAME SUBSTANCE. ACCEPTABLE 'PROBLEM' INDICATORS MAY INCLUDE ANY OF THE DMS–IV SIGNS OR SYMPTOMS OF A SUBSTANCE DISORDER, AND/OR A FORMAL ADMISSION/ACKNOWLEDGMENT OF A 'PROBLEM.'"

18 U.S.C. § 3621(b) provides, in part:

"The Bureau shall make available appropriate substance abuse treatment · for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."

18 U.S.C. § 3621(e)(1)(C) mandates that the BOP "shall" provide "residential substance abuse treatment" for all "eligible prisoners." Subdivision (e)(5)(B) provides:

"(B) The term 'eligible prisoner' means a prisoner who is-

(i) determined by the Bureau of Prisons to have a substance abuse problem; and

(ii) willing to participate in a residential substance abuse treatment program."

Here, the BOP has determined that petitioner is ineligible for the RDAP because of, in Dr. Carpenter's words, "a lack of professional and substantial documentation indicating a history of dependency, and/or abuse exists for the 12 month period prior to his arrest," or in the words of Regional Director Peter M. Carlson, "you were unable to produce any acceptable documentation which substantiates your self-reported substance abuse during the relevant timeframe."

In *Downey v. Crabtree, supra,* 100 F.3d at page 666, the Ninth Circuit states:

"Without doubt, the Bureau has broad discretion over the entire drug-treatment process within the federal corrections system, beginning with determining which inmates ever enter substance-abuse programs."

In the recent case of *Bowen v. Hood,* 202 F.3d 1211 (9th Cir.2000), the court reiterated the familiar rules concerning a governmental agency's interpretation of a statute:

[T]he "agency's interpretation of a statute that it is entrusted to administer is entitled to considerable weight unless it is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Tang v,*

*Reno,* 77 F.3d 1194, 1196–97 (9th Cir. 1996) (citations omitted). Moreover, those strictures still have force when "the Bureau's interpretation appears only in a "Program Statemen[t]'—an internal guideline—rather than in 'published regulations subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment.'" *Reno v. Koray,* 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46[ ] (1995). As the Supreme Court has said, "Bop's internal agency guideline, which is akin to an 'interpretive rule' that 'do[es] not require notice and comment,' is still entitled to some deference, since it is a 'permissible construction of the statute.'" *Id.* (citations omitted); see also *McLean v. Crabtree,* 173 F.3d 1176, 1184 (9th Cir.1999), *cert. denied,* 528 U.S. 1086, 120 S.Ct. 814, 145 L.Ed.2d 685 (2000)."

The *Bowen* court further noted:

There can be little doubt that the Bureau has "broad discretion in administering the sentence reduction treatment program." McLean, 173 F.3d at 1184. That discretion extends to the creation of categorical exclusions. See *id.*; *Jacks v. Crabtree,* 114 F.3d 983, 986 (9th Cir. 1997), cert. denied, 523 U.S. 1009, 118 S.Ct. 1196, 140 L.Ed.2d 325[ ] (1998). No doubt, the exercise must be reasonable, . . . .

*Bowen,* 202 F.3d at 1219.

■ While the BOP is accorded broad discretion over all aspects of the substance abuse treatment program, it must exercise its discretion within the prescribed parameters of its statutory authority. See *SEC v. Sloan,* 436 U.S. 103, 118, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978) (court charged with determining whether agency's exercise of discretion consistent with scope of statutory authority); see also *Downey v. Crabtree, supra,* 100 F.3d at 665 ("[t]he Bureau's endowment of broad discretion does

not immunize its decisions from judicial review. . . .").

Since the enabling statute, 18 U.S.C. § 3621, provides in subdivision (e)(5)(B) that to be eligible for entry into the RDAP an inmate must have been "determined by the Bureau of Prisons to have a substance abuse problem," the question presented here is whether the BOP's "practice" of requiring "formal documentation" of the inmates' having a "substance abuse problem" *during the last 12 months prior to an inmates arrest or incarceration,* is permissible under the statute and, if so, whether its application to petitioner, under the facts of this case, constituted an abuse of the BOP's discretion.

Since 18 U.S.C. § 3621 does not set forth the criteria for determining whether an inmate has a substance abuse problem, it would seem to be a reasonable exercise of the BOP's broad discretion to establish such criteria. See *Bowen v. Hood, supra,* 202 F.3d at 1219 ("In fact, Congress expected the BOP to make early-release determinations 'based on criteria to be established and uniformly applied. . . .'" quoting *Bellis v. Davis,* 186 F.3d 1092, 1094 (8th Cir.1999)). To this end, the BOP adopted Program Statement 5330.10 which states that to qualify for the RDAP an inmate must be diagnosed according to the DSM–IV.

P.S. 5330.10 § 5.4.1(a)(1) provides that "any written documentation in the inmate's central file which indicates the inmate used the same substance, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem."

■ The DSM–IV does not require documentation of substance abuse or dependency during the 12–month period *immediately preceding either a diagnostic interview, arrest, or incarceration.* The "practice" of the BOP in requiring such

documentation as a pre-requisite for eligibility to enter the RDAP would, therefore, appear to be contrary to P.S. 5330.10 and an impermissible requirement under the statute, or, at the very least, an unreasonable exercise of the BOP's discretion as applied to petitioner, for the following reasons:

1) Respondent acknowledges petitioner is qualified for the RDAP, in all respects, save for satisfactory documentation of a drug abuse problem within the 12–month period prior to his incarceration;

2) Pursuant to 18 U.S.C. 3621, the BOP adopted P.S. 5330.10 established criteria for eligibility of inmates for admission to the RDAP; Chapter 5 of P.S. 5330.10 requires the inmate to have a "verifiable documented drug abuse problem" and that "any written documentation in the inmates's central file which indicates that the inmate used the same substance, for which a diagnosis of abuse or dependence was made via the interview, *shall* be accepted as verification of a drug abuse problem." (emphasis added.);

3) The October 21, 1996, memo from Regional Drug Abuse Program Coordinator Beth Weinman states that "documentation of substance abuse or dependence" includes both an eligibility interview leading to a diagnostic impression of alcohol or other 'legal' substance abuse/dependence during the last 12 months prior to arrest or incarceration, and evidence from documentation in the central file, or other formal documentation, that the inmate had a problem with the same substance, *and acceptable indicators may include a formal admission/acknowledgment of a "problem."* (emphasis added.);

4) Utilizing the DSM–IV manual, the diagnostic impression of Counselor Angelo and Dr. Carpenter following the eligibility interview was that petitioner had a substance abuse or dependence problem, specifically alcohol dependence, canabis (marijuana) abuse, and polysubstance dependence;

5) At the time of, and as a part of, the eligibility interview, petitioner formally admitted and acknowledged in writing that he had an alcohol and drug use problem during the last 12 months he was in the community (on the street);

6) Prior to Dr. Bickart's memo of March 9, 1999, advising petitioner of his ineligibility for the RDAP, the BOP had received numerous letters, declarations and/or sworn statements from family members and others documenting petitioner's long standing alcohol and drug abuse problems, including during the last 12–month period prior to his arrest on the charges for which he is presently incarcerated. The authenticity of the following were personally confirmed by Dr. Austin Carpenter:

a) Letter from petitioner's brother-in-law, Dr. Steven M. Boehning, an ordained Baptist minister, dated February 14, 1999. Pet's Exh. "G–1."

b) Letter from petitioner's sister, Margie Peebles, dated February 16, 1999. Pet's Exh. "G–3."

c) Declaration of petitioner's mother, Virginia Mitchell, dated February 8, 1999. Pet's Exh. "G–4."

In addition, the following declarations and sworn statements were received by the BOP prior to the March 9, 1999, ineligibility memo:

d) Affidavit of petitioner's brother, David R. Mitchell, dated February 16, 1999. Pet's Exh. "G–6."

e) Declaration of petitioner's son, Christopher Joel Mitchell, dated November 25, 1998. Pet' Exh. "G–7."

f) Affidavit of petitioner's friend and former employee, David C. Black, dated December 21, 1998. Pet's Exh. "G–8."

g) Affidavit of fellow gambler, William Tripp, dated February 19, 1999. Pet's Exh. "G–9."

The following were received by the BOP prior to the final decision on petitioner's administrative appeal:

h) Declaration of petitioner's sister, Susan K. Boehning, RN., BSN., dated June 2, 1999. Pet's Exh. "G–2."

i) Affidavit of petitioner's brother, Havis Mitchell, dated March 17, 1999. Pet's Exh. "G–5."

Moreover, petitioner had reported his drug and alcohol abuse problems to the BOP on several occasions prior to applying for admission to the RDAP, as reflected in Psychology Services Intake Screening Summaries dated January 19, 1993 (Pet's Exh. "O–1"); August 17, 1994 (Pet's Exh. "O–2"); March 24, 1995 (Pet's Exh. "O–3"); May 24, 1996 (Pet's Exh. "O–4"); and June 20, 1996 (Pet's Exh. "O–5").

From all of the above, it would appear that petitioner met all of the criteria of S.B. 5330.10 *and* of the October 1996 memo from Regional Drug Abuse Program Coordinator Beth Weinman. That being the case, finding petitioner ineligible for admission to the RDAP was unreasonable and arbitrary and an abuse of the BOP's discretion.

### CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that the instant petition for a writ of habeas corpus be GRANTED and the case remanded to the Bureau of Prisons for reconsideration of petitioner's eligibility for admission to the Residential Drug Abuse Program in light of the views expressed herein.

These findings and recommendations are submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).