Alan Michael LAWS, Petitioner

v.

Jose BARRON, Jr., Respondent.

No. CIV.A. 6:04–133–DCR.

United States District Court,
E.D. Kentucky,
London Division.

Sept. 15, 2004.

Robert W. Ritchie, Knoxville, TN, for Alan Michael Laws, Plaintiff.

Marianna Jackson Clay, U.S. Attorney's Office, EDKY, Lexington, KY, for Jose Barron, Jr. Warden, FCI Manchester, Kentucky, Defendant.

## MEMORANDUM OPINION AND ORDER

REEVES, District Judge.

This matter is currently pending for consideration of the parties' respective motions for summary judgment. [Record Nos. 16 and 19] Because the Court finds that there are no material issues of fact to be resolved and that the Respondent is entitled to judgment as a matter of law, the Respondent's motion will be granted and the petition for a writ of habeas corpus will be dismissed.

## BACKGROUND

The facts relating to this action are not in dispute and are outlined in the original petition and in the materials filed in support of the competing motions and their attachments. Petitioner Laws was convicted on several fraud-related charges in the United States District Court for the Eastern District of Tennessee (*United States of America v. Alan Michael Laws*, No. 2: 96–17–2). On August 6, 1999, he was sentenced to 87 months' incarceration, followed by 5 years of supervised release. The Petitioner arrived at the Federal Correctional Institution in Manchester, Kentucky, on October 12, 1999, and he continues in the Bureau of Prisons ("BOP") custody at that location. The BOP has projected his release date, *via* good conduct time, to be February 3, 2006.

At some point (evidently in 2002), the Petitioner moved the trial court to amend its judgment to add a recommendation that he be permitted to participate in the BOP's Residential Drug and Alcohol Treatment Program ("RDAP").[1] On January 15, 2003, the motion was granted with the Court noting that the amendment was appropriate because Laws had been arrested twice for driving under the influence. The Court amended the judgment to add the recommendation "[t]hat the defendant be permitted to participate in the BOP Residential Drug and Alcohol Treatment Program" and to add a requirement that Laws later participate in a substance abuse program, under a probation officer's direction, as a condition of his supervised release.

---

1. While it appears that the sentencing court may have acted outside its jurisdiction in amending Laws' sentence (see Rule 35 of the Federal Rules of Criminal Procedure), that issue has not been addressed by the parties and will not be discussed further in this opinion.

With these amendments, in March of 2003, the Petitioner applied to participate in the BOP's RDAP program. However, the Coordinator for all of the substance abuse programs at FCI–Manchester, Dr. Cynthia Hanson, Ph.D., denied him entry into the RDAP on the ground that he was ineligible. In an affidavit later submitted by the Respondent, she explains that eligibility is contingent on a finding of a substance abuse problem, and the determination of a substance abuse problem is based upon a two-part process in conformity with the BOP's Program Statement (P.S.) 5330.10. This program statement requires that the Coordinator find: (1) a substance abuse disorder; and (2) verification of the diagnosis in the prisoner's pre-sentence report ("PSI") or other similar documents in the inmate's central file. Both of these steps have detailed components which must be satisfied and which are at issue in this action.

According to Hanson's decision about Petitioner Laws, when he was interviewed for the first step, he described his drinking pattern as only the "social" use of alcohol. When Hanson went to the next step (checking his PSI and other central file documents), she found that:

> Although the PSI documents alcohol abuse between 1987 and 1992 (2 DUI convictions + participation in an alcohol abuse tx [sic] program), it does not confirm a continued alcohol abuse problem between 1992 and 1996, when the inmate was arrested on the current offense.

Petition's Exhibit 3 (hereafter, "Ex.____"). Therefore, she determined that the Petitioner was not eligible to participate in the RDAP.

The Petitioner sought reconsideration of Hanson's decision on the ground that the PSI interviewer choose to use the term "social" to describe his drinking. Laws claims that, in actuality, "the last 12 months before self-reporting to the FPC Manchester in October of 1999[he] drank alcohol daily in an abusive and harmful manner," and his "previous record of two DUI convictions and a 30 day stay at an alcohol abuse program bears out the problems [he] had and continued to have with alcohol up until [he] came to prison." Ex. 4.

In response, the Coordinator explained that the "policy states there must be documentation of alcohol abuse during the 12 months prior to arrest" and the Petitioner's PSI does not contain such documentation. She attached to her response a paragraph of a memorandum from the Regional RDAP Coordinator, which provides that:

> To reiterate, inmates must have a verified diagnosis of substance abuse or dependence. Verification must come from the PSI or other official record. To be eligible for residential drug abuse treatment, an inmate must be able to demonstrate he has used either an illegal substance in the 12 months prior to arrest and/or incarceration, or he abused alcohol in this same 12 month period. It is critical that you review the inmates on this list to make sure they meet this standard.

Ex. 5.

The Petitioner submitted another request for reconsideration, which included citations to case law in his favor, but it too was denied. The Petitioner then began the BOP's formal administrative remedy process, Remedy No. 304928, through the several levels of appeals, the final step being the attached response of the national office on February 24, 2004. Ex. 5–9. Having exhausted the BOP's administrative remedies (which the Respondent admits he has done), the Petitioner filed the instant action on March 31, 2004.

## THE PARTIES' POSITIONS

### The Petitioner

Laws' asserts that he is eligible for the RDAP because he has satisfied all of the statutory, regulatory, and program statement requirements for the program as contained in 18 U.S.C. § 1321, 28 C.F.R. § 550.56, and BOP Program Statement ("P.S.") 5330.10 at 5.4.1. He was denied entrance to the RDAP, however, based on requirements which are not found in—and are more stringent than—these sources. After meeting the known criteria for eligibility, the Petitioner discovered during the administrative process that he had been denied entry into the program because the BOP's undisclosed policy: (1) requires documentary verification of the prisoner's *abuse* of alcohol, while requiring verification of only *use* of other drugs; and (2) focuses on the 12–month period preceding his arrest or incarceration, requiring verification about the abuse or use taking place only during that time period. Laws asserts that the BOP acted arbitrarily and its decision was an abuse of discretion because it imposed eligibility requirements going beyond its program statement.

In support of his position, Laws relies upon the language in the above-cited provisions and two district court cases: *Mitchell v. Andrews*, 235 F.Supp.2d 1085 (E.D.Cal.2001), and *Kuna v. Daniels*, 234 F.Supp.2d 1168 (D.Or.2002). In each of these cases, the Court agreed with the petitioner, finding that the BOP acted arbitrarily in imposing additional requirements beyond those in its program statement. Those courts granted the relief sought and remanded the actions so that the BOP could reconsider the petitioner's eligibility using only what it found to be permissible criteria.

### The Respondent

In response, the warden provides background information regarding the BOP's drug treatment programs, primarily through the attached declaration of Coordinator Hanson. [Record No. 15, Ex. B] She explains that the BOP has two types of drug abuse programs, both of which are available at FCI–Manchester. The RDAP (which lasts 9 months) requires inmates to be housed separately from other inmates and has follow-up stages for transition before release. Successful completion of the RDAP results in an inmate becoming eligible for up to one year early release under 18 U.S.C. § 3621. The other program is non-residential, is of much shorter duration, and is used for inmates with substance abuse problems that are not as severe as to warrant the RDAP program. Under this second program, early release is not available upon completion.

The Respondent asserts that the BOP did not abuse its broad discretion in denying Laws eligibility for the RDAP. Instead, he claims that the Petitioner was appropriately found ineligible for the RDAP because the BOP consistently requires documentation of actual abuse if the substance is a legal one such as alcohol. Also, "[c]onsistent with the DSM–IV definition of substance abuse, this documentation must report substance usage or abuse within a twelve month period." Under these requirements, the Petitioner is eligible only for the non-residential program, should he apply.

With respect to the applicable law, the Respondent contends that this Court does not have subject matter jurisdiction to review the BOP's eligibility decision under 18 U.S.C. § 3625, *Davis v. Beeler*, 966 F.Supp. 483 (E.D.Ky.1997), and *United States v. Jackson*, 70 F.3d 874 (6th Cir. 1995). The Respondent points out that the cases cited by the Petitioner from the Ninth Circuit have not been adopted or

referenced by any other court since they were decided. Rather, he claims *Davis* and *Jackson* are controlling in this circuit. Therefore, the Respondent asserts that the Petitioner's attempt to have this Court review the BOP's eligibility decision should be denied and the petition dismissed.

The Respondent also contends that the BOP's interpretation of a substance abuse problem and the criteria for arriving at such a determination are consistent with 18 U.S.C. § 3621(b). Further, he asserts that the interpretation and related criteria are based on legitimate clinical reasons and the BOP's experience with prisoners and drug programs and are applied consistently throughout the BOP. Contrary to Laws' contention that the Respondent's decision was arbitrary, he argues that the BOP's policies regarding eligibility serve to limit enrollment in the RDAP to those prisoners most in need of intense treatment.

## THE MOTIONS FOR SUMMARY JUDGMENT

The parties' motions for summary judgment add little to their original arguments. Indeed, they agree that there is no issue of material fact to be resolved, thus making entry of summary judgment appropriate under Rule 56. They differ, however, on the legal merits of the Petitioner's claim and repeat their original arguments in support of their positions. Additionally, the Petitioner addresses the jurisdictional claim raised by the Respondent and insists that 18 U.S.C. § 3625 does not preclude this Court's review. Rather, he contends that while the Court may lack authority to review a substantive decision made pursuant to lawful statutes and regulations, it does not lack the authority to review whether the BOP "has made a decision based upon unwritten rules and improperly enacted rules." [Record No. 17]

The Petitioner also focuses on the language contained in Respondent's Exhibit C (a 1996 memorandum to RDAP Coordinators from the National Drug Abuse Program Coordinator, on the topic of "Substantiation of Drug Use"). This memorandum breaks down into components what documentation must be found. The Petitioner points out three ways in which the memorandum changes the requirements for verification found in P.S. 5330.10. Therefore, he asserts that the memorandum under which the Petitioner was denied entry into the RDAP constituted a rule not properly promulgated. Accordingly, his claims that his rejection into this program was not permissible. The Petitioner emphasizes that he satisfied the two unambiguous requirements of the Program Statement, *i.e.*, (1) a staff member found that he had a substance abuse disorder; and (2) he had documents in his file verifying that he "used the same substance" identified in the diagnosis established in step (1). Therefore, he claims he was and is eligible for the RDAP program.

In his motion and memorandum for summary judgment [Record No. 19], the Respondent admits that P.S. 5330.10 makes no written distinction between legal and illegal drugs. "In fact, both the statute and the program statement are silent as to the distinction between legal v. illegal substances, leaving the Bureau to interpret how the Bureaus [*sic*] own Program should apply in this context." The Bureau's decision to require verification of actual alcohol *abuse* is not arbitrary, the Respondent argues, but is based on clinical determinations and the desire to provide the RDAP to those most in need of it.

The Respondent characterizes the term "drug abuse problem" as "ambiguous" because it does not contain sufficient terminology to distinguish between types of

drugs or degree of use, and therefore, the Bureau has had to define the term. He insists that the BOP's interpretation of the RDAP qualifications is necessary to implement the statute and also is permissible.

## DISCUSSION

As noted above, the parties agree that the issues raised in this action should be decided *via* summary judgment. Under Rule 56, the Court must determine whether there are "no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, the Court begins consideration of the motions with an examination of the language in the enabling statute and in the BOP's interpretations and policies established afterwards.

### Relevant Authority

In 1990, Congress directed that the Bureau of Prisons "shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). Obviously, deciding what is "appropriate" treatment for each prisoner is a broad grant of discretion.

Later, in the Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA"), Congress amended the statute to encourage prisoner participation in and completion of these programs. Congress provided prisoners convicted of non-

violent offenses with the incentive of early release upon their completion of a RDAP:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B). It is not surprising that the statute had the desired effect. Droves of prisoners who were convicted of non-violent offenses, such as the instant Petitioner, have applied to be accepted into qualifying programs such as the RDAP so as to be eligible for early release.

The portion of the statute about a RDAP mandates that the BOP "shall" provide a "residential substance abuse treatment" for all "eligible prisoners." 18 U.S.C. § 3621(e)(1)(C). Another subdivision provides the following as a definition of who is an "eligible prisoner":

> (B) The term 'eligible prisoner' means a prisoner who is-
>
> > (i) determined by the Bureau of Prisons to have a substance abuse problem; and
> >
> > (ii) willing to participate in a residential substance abuse treatment program.

18 U.S.C. § 3621(e)(5)(B). Thus, Congress has clearly authorized the BOP to select those prisoners who will be best served by participation in such a program.

Since 18 U.S.C. § 3621 does not set forth the criteria for determining whether an inmate has "a substance abuse problem," the BOP has exercised the broad discretion granted to it to establish criteria for making such a judgment. In 1995, the BOP first adopted regulations implementing the VCCLEA, including those concerning the choice of prisoners for enrollment.

Regarding the BOP's residential drug abuse treatment program, the pertinent regulation, amended only once since then, first describes the nature of the program and then provides that:

(a) Eligibility. An inmate must meet all of the following criteria to be eligible for the residential drug abuse treatment program.

(1) The inmate must have a verifiable documented drug abuse problem.

(2) The inmate must have no serious mental impairment which would substantially interfere with or preclude full participation in the program.

(3) The inmate must sign an agreement acknowledging his/her program responsibility.

(4) Ordinarily, the inmate must be within thirty-six months of release.

(5) The security level of the residential program institution must be appropriate for the inmate.

28 C.F.R. § 550.56.

In the present case, as in the two cases cited by the Petitioner, the BOP determined that the Petitioner is ineligible for the RDAP because he did not meet the first requirement in the regulation, i.e., the BOP did not determine that he has "a verifiable documented drug abuse problem." Therefore, this Court must examine the BOP's interpretation of how the first requirement is fulfilled, as it appears in Program Statement 5330.10, *Drug Abuse Programs Manual, Inmate.* That program statement, promulgated in June of 1995 and amended in 2000, sets forth in Chapter 5 each of the requirements listed in the above-quoted regulation and then adds defining language. Under the first component, "The inmate must have a verifiable documented drug abuse problem," the policy explains:

Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the *Residential Drug Abuse Program Eligibility Interview* followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information. The inmate must meet the diagnostic criteria for substance abuse or dependence indicated in the *Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edition, (DSM—IV).* This diagnostic impression must be reviewed and signed by a drug abuse treatment program coordinator.

Additionally, there must be verification in the Presentence Investigation (PSI) report or other similar documents in the central file which supports the diagnosis. Any written documentation in the inmates' central file which indicates that the inmate *used the same substance,* for which a diagnosis for abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem.

P.S. 5330.10 at 5.4.1.

According to Dr. Hanson, in compliance with the first paragraph set out above, the instant petitioner's initial interview and diagnostic testing led to the diagnostic impression of alcohol abuse by the Petitioner. However, when she went on to the second step, Dr. Hanson "found Petitioner did not meet the second part of the requirement, substantiation in the Petitioner's PSI or other central file documents of alcohol abuse by Petitioner." Record No. 15 at Ex. B, p. 6. Further, regarding the second paragraph, Dr. Hanson explains that the BOP construes its own policy as follows:

[P]art two of Chapter 5.4.1. [requiring documentation of "use" is construed] ... as being applicable to **illegal** drugs, such as cocaine, marijuana, or heroin. However, the bureau consistently re-

quires documentary evidence of actual abuse (part two), if the diagnostic impression (part one) is alcohol abuse, or abuse of other legal substances. This requirement is applied to all inmates applying for RDAP throughout the entire Bureau. *Id.* "Consequently, because Petitioner only had documentation in his PSI of drinking beer on a social basis, he was found not eligible for RDAP." *Id.*

This policy which differentiates between accepting documentation of "use" with regard to illegal substances versus requiring documentation of "abuse" for legal substances, was further explained in an October 21, 1996 memorandum from Beth Weinman, National RDAP Coordinator. In this memorandum, Weinman defines a "legal substance disorder" as one involving alcohol or prescribed medications and she outlines the standard of documentation required to verify a diagnosis of a legal substance disorder, such as the Petitioner's. Ex. C. She has written, "Documentation of substance abuse or dependence is required for every inmate entering a residential program," and the documentation must include both of the following:

A. An eligibility interview that leads to a diagnostic impression of alcohol or other "legal" substance abuse/dependence during the last 12 months prior to arrest and/or incarceration; and

B. Evidence from documentation in the central file, or other formal documentation, that the inmate had a 'problem' with the same substance. Acceptable "problem" indicators may include any of the DSM–IV signs or acknowledgment of a "problem."

*Id.*

Under these policies, including memoranda, the BOP determined that Petitioner Laws did not meet the first requirement in the regulation by demonstrating "a verifia-

ble documented drug abuse problem," because his documentation was not of "abuse" of alcohol and was not for "the last 12 months prior to arrest and/or incarceration," neither of which appears in the relevant statute, regulation, or program statement.

### Jurisdiction

■ While the BOP is accorded broad discretion, it must exercise its discretion within the prescribed parameters of its statutory authority. *See SEC v. Sloan*, 436 U.S. 103, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978) (the court is charged with determining whether agency's exercise of discretion is consistent with scope of statutory authority). The Supreme Court has stated that some deference is paid even when "the Bureau's interpretation appears only in a 'Program Statemen[t]'—an internal guideline—rather than in 'published regulations subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment.'" *Reno v. Koray*, 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). A BOP Program Statement is "an internal agency guideline, which is akin to an 'interpretive rule' that 'do[es] not require notice and comment,' [but] is still entitled to some deference, since it is a 'permissible construction of the statute.'" *Id.*

■ As the court in *Mitchell* pointed out, an agency's interpretation of a statute that it is entrusted to administer is entitled to considerable weight unless it is arbitrary, capricious, or contrary to the statute. *Mitchell*, 235 F.Supp.2d at 1089. "Without doubt, the Bureau has broad discretion over the entire drug-treatment process within the federal corrections system, beginning with determining which inmates ever enter substance-abuse programs." *Id.* Still, the court went on to

entertain that petitioner's challenge to his denial of entry into RDAP, ultimately finding that it was contrary to the program statement and unreasonable as applied to the petitioner.

■ *Davis* contains a discussion of the scope of the court's jurisdiction to review a related issue: the decision regarding eligibility for early release after completion of the RDAP. Looking at 18 U.S.C. § 3621(b) and § 3625, the *Davis* court found that Congress intended to commit the early-release decision to the discretion of the BOP and make them "unreviewable." 966 F.Supp. at 489. Nonetheless, under Supreme Court decisions, a court may still review these protected decisions in two circumstances: (1) if a cognizable constitutional claim has been presented; or (2) if the agency's interpretation of the statutory language "contravenes well-settled case law." *Id.* at 489–90. The court held that the "sole issue" before it was whether the BOP's interpretation of a term in the statute contravenes well-settled case law. *Id.* at 490. Therefore, following the analysis stated in *Davis,* this Court asserts jurisdiction to review whether the BOP's interpretation of another part of the same statute is contrary to law, and proceeds to examine what law is relevant and well-settled.

## *Analysis*

The majority of the litigation surrounding 18 U.S.C. § 3621 pertains to a prisoner's eligibility for early release after completion of the RDAP under 18 U.S.C. § 3621(b). The criteria for early release eligibility is outlined in 28 C.F.R. 550.58, while the eligibility for entry into the RDAP program is contained in 28 C.F.R. § 550.56. An entire body of case law has arisen from the BOP's interpretation of the statutory phrase "convicted of a nonviolent offense" in deciding which prisoners are eligible for the grant of early re-

lease. *See* 18 U.S.C. § 3621(e)(2)(B); 28 C.F.R. § 550.56. Since 1995, the BOP has promulgated four different versions of § 550.58 to deny eligibility for early release to prisoners who had been convicted of any of a list of crimes which the BOP has designated by regulation to be "crimes of violence." The results were routinely challenged by prisoners found ineligible for early release because their conviction was for an offense on the "crimes of violence" list in the regulation.

Such was the situation in *Davis,*—a case in which this Court (Chief Judge Karl S. Forester presiding) found no merit in any of the petitioners' arguments. The Court concluded, "[i]n the absence of binding precedent in this Circuit holding that [the petitioner's crime] is not a crime of violence, the BOP's action challenged herein cannot constitute an abuse of its discretion." Therefore, the Court rejected the petitioner's abuse of discretion argument and denied habeas relief. Seven years later, this Court again finds no binding precedent in this circuit contravening the BOP's interpretation of a substance abuse problem in policy. Thus, the Court again concludes there is no abuse of discretion.

The instant issue of eligibility for entry into the RDAP program has not spawned the litigation that the issue of eligibility for early release has yielded. In fact the cases cited by Petitioner Laws (*Mitchell* and *Kuna*) appear to be the only ones. This Court has reviewed these decisions as well as the cases cited by the Respondent and the Supreme Court's language about the legislation at issue herein, in order to assess whether the Bureau's interpretation of its written materials in making RDAP eligibility decisions is permissible. In summary, the Court finds no well-settled case law which the BOP's interpretation contravenes.

As noted above, the Court has also examined Supreme Court holdings regarding the subject statute, as it reviewed the BOP's several interpretations of "crime of violence" in *Lopez v. Davis,* 531 U.S. 230, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001). Acknowledging the BOP's several attempts to define the crimes and ensuing splits in the circuits regarding a categorical interpretation of "nonviolent offense," the Supreme Court first wrote of the limited nature of judicial review:

> [W]here Congress has enacted a law that does not answer the "precise question at issue," all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap "in a way that is reasonable in light of the legislature's revealed design."

*Id.* at 242, 121 S.Ct. 714 [citations omitted].

Lopez argued that the statutory phrase, "convicted of a nonviolent offense," was "unambiguous," just as the Petitioner in this action contends that the requirement of documenting only "use" in P.S. 5330.10 is unambiguous. The *Lopez* Court ultimately held that, to the extent Congress left a gap in § 3621(e)(2)(B) for the BOP to fill with a definition, deference is owed to the BOP's interpretation, under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (the judiciary is the final authority on issues of statutory construction), so long as the interpretation is a permissible construction of the statute. *Id.* at 242, 121 S.Ct. 714. The regulation categorically listing what the BOP felt were crimes of violence and thereby denying eligibility for early release to prisoners convicted of any of them, was determined to be a permissible exercise of the Bureau's discretion under 18 U.S.C. § 3621(e)(2)(B). *Id.* at 244, 121 S.Ct. 714.

In *Jackson* (cited by the Respondent), the Sixth Circuit decided that the sentencing court did not have the authority to order a prisoner into a drug treatment program. Instead, the district court could only recommend that he be able to participate. In so holding, the Court noted that under 18 U.S.C. § 3621(b), "it is solely within the authority of the Federal Bureau of Prisons ('Bureau') to select those prisoners who will be best served by participation in such programs." The Sixth Circuit also noted that, "[f]urthermore, under the federal regulations, the Bureau has broad authority to manage the enrollment of prisoners in drug abuse treatment programs." 70 F.3d at 877–78.

It is true that in none of the provisions in the statute, the regulation, or the program statement, nor in the DSM–IV which is referenced therein, does the requirement appear that the documentation must be of alcohol "abuse" or that the documented abuse must be in the 12–month period immediately preceding a diagnostic interview, arrest, or incarceration. In the hierarchy with the statute at the top, a regulation to implement the statute at the next level, and an interpretative program statement under that, is it permissible to use the instant policy underlying all of the tiers and to deny eligibility to the Petitioner using that underlying policy?

In *Mitchell,* the district court wrote that the BOP's practice of determining RDAP eligibility by requiring that the documentation be for alcohol abuse, rather than use, and that the documentation be for the 12–month pre-incarceration period "would, therefore, appear to be contrary to P.S. 5330.10 and an impermissible requirement under the statute, or at the very least, an unreasonable exercise of the BOP's discretion as applied to the petitioner," for certain enumerated reasons. 235 F.Supp.2d at 1091.

However, the record in that action established that the petitioner had addictions to illegal substances (cannabis and "polysubstance" dependence) as well as alcohol. Also, the reasons enumerated by the district court as justifying its conclusion included the fact that at the time of his review for eligibility, the petitioner's central file included not only his interview statement admitting a problem with three substances, but also recent declarations and affidavits about his substance problem from family members, friends, and a past employee. Further, the BOP's own Psychology Services records had entries reflecting his substance abuse problem for four straight years preceding his application. Therefore, "[f]rom all of the above, it would appear that the petitioner met all of the criteria" of P.S. 5330.10 and the Weinman memo. *Id* at 1092. "That being the case, finding the petitioner ineligible for admission to the RDAP was unreasonable and arbitrary and an abuse of the BOP's discretion." *Id.*

█ The record in this case is markedly different from *Mitchell.* Petitioner Laws had in his BOP file information on his alcohol abuse from more than a decade ago, his last DUI being in 1992 and nothing documenting an alcohol problem between that date and his 1996 arrest; his recent statement, in his RDAP interview, that he only drank beer, using but not abusing alcohol prior to his arrest; and a 2002 attempt to get the trial court to amend his 1999 criminal judgment to acknowledge a substance problem so that he could have another document in his file to gain admission to the program.

Additionally, this Court agrees with the Respondent that the BOP policies challenged herein appear to be well-reasoned. According to the RDAP Coordinator's declaration, the in-the-record documentation requirement "is necessary to ensure the inmate is not falsely reporting symptoms of substance abuse problem during the testing phase to gain entry into the RDAP." [Record No. 15, Exhibit B] After describing the rigors and intensity of the RDAP, Dr. Hanson also explains the reason for the BOP's policy of demanding documentation of "use" for illegal substances but "abuse" for legal ones such as alcohol, as follows:

> The Bureau's interpretation of the RDAP qualification language of Chapter 5.4.1 of the DAP Manual as being applicable to inmates who abused illegal substances is based upon the Bureau's long experience in running RDAP and other drug programs. The Bureau found many inmates who qualified for RDAP who abused alcohol and other legal substances actually were not clinically in need of intensive RDAP to gain entry into the program. Accordingly, the Bureau requires inmate with DSM–IV diagnoses of abuse of legal substances, including alcohol, to have documentation in their central files of actual abuse of the legal substance in order to have a "verifiable documented drug use problem" for RDAP eligibility purposes.

*Id.* at 4. Petitioner Laws does not refute this clinical reason underlying the "abuse" standard being applied to alcohol. And it seems imminently reasonable to this Court to consider that prisoners who have documented use of illegal drugs just prior to incarceration are in need of a more rigorous program than prisoners who have merely used alcohol.

The requirement that the abuse occurred in the 12–month pre-incarceration period of time is explained as "[c]onsistent with the DSM–IV definition of substance abuse." *Id.* at 2. Again, common sense would dictate that entry into the most rigorous program would be restricted to those prisoners having a recent history of

abuse, rather than one who can demonstrate that he had a substance abuse problem 4 to 9 years prior to arrest and 7 to 12 years prior to incarceration.

Two other aspects of the eligibility criteria bear study. The BOP applies the same criteria which it imposed on the instant Petitioner throughout the nation, as evidenced not only by Dr. Hanson's statement to this effect but also by the language in the regional and national coordinators' internal memoranda, as they instruct and emphasize consistency. The consistency of imposing these requirements throughout the BOP prisons is unchallenged. Also, these standards and the consistency with which these standards are applied promotes the BOP's stated goals of properly diagnosing those inmates with severe drug abuse problems who necessitate intensive residential treatment, and then devoting its resources for the RDAP to only those prisoners with a clear clinical need for an intensive, residential program.

Based on this record, and with no controlling and contravening case law, this Court concludes that Petitioner Laws has been ruled ineligible for the RDAP under standards which are permissible for the BOP to apply to prisoners under the statute and that the application of these standards to deny him eligibility for the RDAP is reasonable. The Court acknowledges that the two requisites challenged herein, *i.e.*, that the documentation be (1) of abuse rather than use; and (2) of the abuse occurring in the 12 months prior to incarceration, do not appear in the BOP's regulation or program statement, but in explanatory paragraphs of policy. That fact, however, does not change this Court's conclusion that imposing them is a reasonable exercise of the BOP's statutory discretion to determine who among the prison population has "a substance abuse problem"

and to choose "appropriate" treatment for each prisoner who claims to need treatment. *See* 18 U.S.C. § 3621(b); 28 C.F.R. § 550.26.

The BOP's relevant regulation has been amended only once, and the corresponding program statement was formulated in 1996. Either or both may include the abuse for 12 pre-incarceration months as explanatory requirements next time they are amended. The fact that they do not appear now has not been challenged in this action as a constitutional violation, nor could there be such a claim, as there is no liberty interest in participation to trigger notice requirements. *See Wottlin v. Fleming* 136 F.3d 1032, 1036 (5th Cir.1998) (citing *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)).

In summary, the Court finds that the BOP's interpretation of the term in 18 U.S.C. § 3621(e)(5)(B), "a verifiable documented substance abuse program," to require documentation of alcohol abuse in the 12 months prior to incarceration does not contravene well-settled law. In fact, this result is consistent with the result reached by the Supreme Court and other lower courts in evaluating other portions of the same statute and the BOP's discretionary authority therein. In *Lopez*, with regard to 18 U.S.C. § 3621(e)(2)(B), the Supreme Court noted that, besides limiting early release to a duration of one year and to only those convicted on a non-violent offense, Congress gave the BOP discretion in its determinations of eligibility for early release, and "Congress has not identified any further circumstance in which the Bureau either must grant the reduction, or is forbidden to do so." Therefore, the BOP's interpretation of the statute need only be reasonable, and the Court found that the BOP's conclusion with regard to Lopez was reasonable. 531 U.S. at 242, 121 S.Ct. 714.

Similarly, with regard to determinations of eligibility for participating in the RDAP, Congress has required that the prisoner be "determined by the Bureau of Prisons to have a substance abuse problem." 18 U.S.C. 3621(e)(5)(B). In this aspect also, Congress has neither mandated eligibility in a particular circumstance nor barred eligibility in any circumstance. Applying the same rationale in this case, the Court finds that the BOP's conclusion that Laws is ineligible for RDAP because he has not shown documentation of alcohol abuse during the 12 months prior to incarceration is a reasonable one. This result is also consistent with the analysis and result of the "crime of violence" cases which continue to be litigated to date.

Another district court recently concluded as follows:

It is within the authority of the Bureau to make case-by-case assessments regarding who among the statutorily eligible nonviolent offenders are actually appropriate candidates for early release under § 3621(e) based on such considerations as pre-conviction conduct, the nature and circumstances of the offense, the potential for rehabilitation, the sentencing court's recommendation, post-conviction conduct, and *any other criteria that the Bureau deems relevant.* *See* 18 U.S.C. § 3621(b); *Lopez,* 531 U.S. at 241–42, 121 S.Ct. 714 (statute does not limit considerations Bureau can use to guide its decision).

*Ortiz v. Fleming,* 2004 WL 389076 at *3 (N.D.Tex.2004) (not reported in F.Supp.2d) (emphasis added) (disqualifying petitioner based on his past conviction for a "violent offense," rather than the current conviction, was a reasonable exercise of the Bureau's broad discretion under the statute, and consequently, the petitioner was not entitled to habeas relief).

This Court has found that the BOP's disqualification of the instant Petitioner based on his failure to document actual abuse of alcohol during the 12–month period preceding his incarceration to be reasonable under the authority granted to the BOP by Congress. The Court also finds that there is no issue of material fact to be resolved in this action and concludes that the Respondent is entitled to judgment as a matter of law. Accordingly, it is hereby

**ORDERED** as follows:

(1) The Petitioner's motion for Summary Judgment [Record No. 16] is **DENIED.**

(2) The Respondent's motion for Summary Judgment [Record No. 19] is **GRANTED.**

(3) The petition for writ of habeas corpus is **DENIED** and this action **DISMISSED** from the docket of the Court, with prejudice.

(4) This is a **FINAL** and **APPEALABLE** Order and there is no just cause for delay.