**Ralph SMITH, Petitioner,**

v.

**Jose VAZQUEZ, Respondent.**

**Civil Action No. CV206–275.**

United States District Court, S.D. Georgia, Brunswick Division.

June 5, 2007.

---

**1166**

Ralph Smith, Jesup, GA, pro se.

Danial E. Bennett, U.S. Attorney's Office, Savannah, GA, for Respondent.

### *ORDER*

ALAIMO, District Judge.

After an independent review of the record, the Court concurs with the recommendation of the Magistrate Judge that Ralph Smith's petition for writ of habeas corpus be **GRANTED**. Smith, an inmate currently confined at the Federal Satellite Low in Jesup, Georgia ("FSL Jesup"), filed a peti-

tion for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Smith applied to participate in the Bureau of Prisons' ("BOP") Residential Drug Abuse Treatment Program ("RDAP"), but the BOP determined that he was ineligible because he failed to demonstrate the existence of a substance abuse problem within the twelve months preceding his incarceration. The Magistrate Judge found that the BOP's determination of Smith's ineligibility was an abuse of discretion because it improperly relied upon criteria—namely, the "twelve months preceding" requirement—not found within its policies. Accordingly, the Magistrate Judge concluded that Smith's case should be remanded to the BOP for reconsideration of his application without the use of this impermissible requirement.

In his Objections, Respondent asserts that the BOP's policy requiring proof of substance abuse within twelve months of incarceration is a proper exercise of its discretion in making eligibility determinations. Respondent contends that the "twelve months preceding" requirement represents a "considered application" of the DSM–IV, the diagnostic manual referenced in the BOP's program statement, and that the policy has been upheld by several other district courts in recent years.

18 U.S.C. § 3621(e)(1)(C) requires that the BOP "shall" provide "residential substance abuse treatment . . . for all eligible prisoners." An "eligible prisoner" is defined as one who is "determined by the Bureau of Prisons to have a substance abuse problem. . . ." 18 U.S.C. § 3621(e)(5)(B)(i). The BOP's regulation implementing the statute establishes certain criteria for prisoner eligibility:

(a) Eligibility. An inmate must meet all of the following criteria to be eligible for the residential drug abuse treatment program.

(1) The inmate must have a verifiable documented drug abuse problem....

28 C.F.R. § 550.56(a). Additionally, the BOP's Program Statement explains the procedure for verifying a drug abuse problem under this section:

Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the *Residential Drug Abuse Program Eligibility Interview* followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information. The inmate must meet the diagnostic criteria for substance abuse or dependence indicated in the *Diagnostic and Statistical Manual of the Mental Disorders. Fourth Edition. (DSM–IV)*. This diagnostic impression must be reviewed and signed by a drug abuse treatment program coordinator.

Additionally, there must be verification in the Presentence Investigation (PSI) report or other similar documents in the central file which supports the diagnosis. Any written documentation in the inmate's central file which indicates that the inmate *used* the *same substance*, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem.

P.S. 5330.10 § 5.4.1; Doc. No. 8, Exh. 2.

Smith's application to participate in the RDAP was denied because the BOP found no documented substance abuse problem within the twelve months preceding his arrest. This "twelve months preceding" requirement is not found in the aforementioned statute, regulation, or program statement, but instead appears to be a "practice" of the BOP in determining

RDAP eligibility. In response to the Magistrate Judge's determination that the DSM–IV referenced in the Program Statement does not provide justification for the "twelve months preceding" requirement, Respondent discusses the manual's "definitions" section. (Doc. No. 19, p. 5). This section defines "Sustained Full Remission" as a case wherein "none of the criteria for Dependence or Abuse have been met at any time during a period of 12 months or longer." (*Id.*; Exh. 4–A, p. 196). Again, the definition does not call for the examination of any *specific* twelve-month period. Specifically addressing the "twelve months preceding" requirement that was applied to Smith's application, Respondent refers to and has submitted the declaration of Beth Weinman, the BOP's National Drug Abuse Program Coordinator since 1992. (Exh. 4, p. 1). Therein, Weinman instructs that in using the DSM–IV definitions, "the Bureau looks at the inmate's last 12 months prior to incarceration. If an inmate is found to be in Sustained Full Remission, no use in the twelve months prior to incarceration, he or she is found to be unqualified for the RDAP." (*Id.* at 3).

However, it remains clear that the "twelve months preceding" requirement is not found in the applicable statute, the regulation interpreting the statute, or in the program statement interpreting the regulation. Furthermore, this Court concurs with the Magistrate Judge's determination that the BOP's "practice" of requiring proof of substance abuse within twelve months of some specific event is an impermissible interpretation of the statute for several reasons. First, Respondent has been unable to identify with any specificity or consistency the actual source of the requirement.[1] Second, the additional

---

1. Beth Weinman's declaration on the issue at hand is consistent with the statements of her 1996 memorandum to RDAP coordinators

(Doc. No. 14, p. 14), the memorandum which Respondent initially denied had any influence on the decision to deny Plaintiffs participation

requirement in application appears to operate contrary to the BOP's program statement, which is unambiguous in its instruction that the inmate must meet the diagnostic criteria of the DSM–IV and that "any written documentation in the inmate's central file which indicates that the inmate used the same substance, for which a diagnosis of abuse or dependence was made via the interview, *shall* be accepted as verification of a drug abuse problem." P.S. 5330.10, Ch. 5 (emphasis added). Third, though Respondent considers the "twelve months preceding" requirement a "consistent application of nationwide BOP policy," and asserts that it is "applied uniformly," the Court cannot be so confident. Within the filings of just this case, the policy has been described in several different ways: within twelve months of arrest (Doc. No. 8, p. 2; Doc. No. 19, p. 1, 3); within twelve months of incarceration (Doc. No. 19, p. 5, 6, 8, 9, 10, 11); within twelve months of commission of the offense (Doc. No. 8, p. 7; Doc. No. 19, pp. 10–11); within the "twelve-month period of time preceding the in-stant offense or a twelve-month period of continuous incarceration" (Doc. No. 8, p. 5). The rule has been stated in different ways by Respondent even in reference to its application to Smith himself. *See* Doc. No. 8, p. 7 ("This determination [that Smith was ineligible] was consistent with the DSM–IV and the BOP's policy of examining an inmate's behavior in the twelve-month period *prior to the offense*"); Doc. No. 19, p. 1 ("Smith/like every other federal prisoner, must have information in his Central File demonstrating that he had a substance abuse

problem *within twelve months of his arrest*"); Pet.'s Exh. 14, p. 3 ("you [did not have] a substance use-related disorder in the twelve months *prior to your incarceration*.").

Accordingly, this Court agrees with the Magistrate Judge's determination that the use of such unannounced, unwritten, and seemingly inconsistent criteria for RDAP eligibility is an unreasonable exercise of the BOP's discretion. Furthermore, Respondent's submission of "contrary persuasive authority" on the issue is somewhat less than persuasive. Respondent asserts that he

> respectfully disagrees with the [Magistrate Judge's] view that "a review of what [case law] does exist reveals there is simply no well-settled controlling law on the subject" of a prisoner's "eligibility for *entry* into the RDAP." (Dkt.# 15, p. 3) (emphasis in original). While it may be true that the Eleventh Circuit and no other federal circuit court has expressly ruled on this precise issue, several district courts have had the opportunity to address similar challenges to the BOP's RDAP eligibility determinations, providing ample persuasive authority to the contrary.

(Doc. No. 19, pp. 7–8). Of course, this Court is bound only by the precedent of the United States Supreme Court and the United States Court of Appeals for the Eleventh Circuit. Thus when the Magistrate Judge refers to "controlling law," he refers to the decisions of these courts only. Respondent's presentation of the decisions of other district courts on the issue, regardless of their geographic proximity to

---

in the RDAP. In his initial Response to Smith's petition, Respondent stated that "... with respect to Smith's specific allegation, [the Southeast RDAP Coordinator] observed that he was not aware of any DAP staff members using the 'Weinman memo'—instead,

they and he rely upon PS 5330.10, the DSM–IV–TR, and their professional judgment." (Doc. No. 8, p. 5). Respondent now appears to present Weinman's interpretation of the rules in her declaration as the source of the "twelve months preceding" requirement.

this Court, does not dispute that determination.

As persuasive authority, then, Respondent provides ten cases from district courts across the country which he contends support his position that the additional "twelve months preceding" requirement is within the BOP's discretion. A review of these cases, however, reveals that only half of them actually support that position. *See Rea v. Sniezek*, No. 4:06CV2424, 2007 WL 427038, at *5 (N.D.Ohio Feb.2, 2007) (finding "twelve months preceding" requirement a permissible interpretation of the statute and not in contravention to well-settled law); *Shew v. FCI Beckley*, No. 5:05–0814, 2006 WL 3456691, at *4 (S.D.W.Va. Sept.19, 2006) (finding "twelve months preceding" requirement permissible exercise of BOP discretion); *Montilla v. Nash*, No. CIVA 05–2474(FLW), 2006 WL 1806414, at *3 (D.N.J. June 28, 2006) ("twelve months preceding" requirement is a reasonable interpretation of the diagnostic manual); *Goren v. Apker*, No. 05 Civ. 9006(PKC), 2006 WL 1062904, at *7 (S.D.N.Y. April 20, 2006) (a "twelve months preceding requirement" would be a permissible exercise of BOP's discretion); *Laws v. Barron*, 348 F.Supp.2d 795, 806–807 (E.D.Ky.2004) ("twelve months preceding" requirement is reasonable and does not contravene well-settled law). The remaining cases cited by Respondent do not actually address the specific criteria at issue in the case *sub judice*—the requirement that a substance abuse problem be present within the twelve months preceding incarceration or arrest or commission of the offense—but instead for the most part analyze other RDAP eligibility criteria implemented by the BOP. *See Batiste v. Menifee*, No.

CIVA 06–0657, 2006 WL 2078186, *4 (W.D.La. June 16, 2006) (holding that BOP's requirement of written documentation to support substance abuse diagnosis is a permissible interpretation of the statute); *Conrod v. Sanders*, No. 2:05CV1915, 2006 WL 1789554, *2 (W.D.La. May 16, 2006) (BOP requirement that substance abuse problem be documented in inmate's central file is reasonable); *Quintana v. Bauknecht*, No. 3:05CV359/LAC/EMT, 2006 WL 1174353, *4 (N.D.Fla. May 2, 2006) (BOP requirement of written documentation in file to support substance abuse diagnosis is reasonable exercise of discretion); *Calhoun v. Warden*, No. 5:05CV198, 2006 WL 887677, *6 (E.D.Tex. April 4, 2006) (no abuse of discretion in BOP determination of eligibility); *Pacheco v. Lappin*, No. 05–C–141–C, 2005 WL 752269, *3 (W.D.Wis. March 30, 2005) (holding that inmate cannot use § 2241 to challenge RDAP eligibility determination).

Furthermore, this Court is not persuaded by the reasoning of the district courts whose holdings do support Respondent's position. In many of these cases, the courts relied in part on *Lopez v. Davis*, 531 U.S. 230, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001), wherein the Supreme Court analyzed the BOP's interpretation of the term "crime of violence" as used in the same statute at issue here. In *Lopez*, the Court held that the BOP's regulation was a permissible exercise of discretion under the statute. *Id.* at 244, 121 S.Ct. at 723. *Lopez*, however, is distinguishable from the case *sub judice* and from the cases cited by Respondent. In *Lopez*, the Court evaluated an inmate's challenge to a BOP *regulation*[2], a rule published and codified in the Code of Federal Regulations after notice and comment. *Id.* at 232–233, 121

---

**2.** The regulation categorically denies early release to inmates whose offense is a felony involving "the carrying, possession, or use of a firearm." 28 C.F.R. § 550.58(a)(1)(vi)(B) (2000).

S.Ct. at 718. Accordingly, because Congress had left the question unanswered by the statute, the Court applied deference under the second step of *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), where the agency only must interpret the statute reasonably and in a manner that is not arbitrary or capricious. *Id.* at 844, 104 S.Ct. at 2782.

■ The "practice" at issue in this case is not a regulation. It is clear that "some deference" is appropriate where the agency's interpretation appears not in a published regulation but in a Program Statement, *Reno v. Koray,* 515 U.S. 50, 61, 115 S.Ct. 2021, 2027, 132 L.Ed.2d 46 (1995) (citation omitted), but this is also not a program statement. It is a "practice," apparently emanating from a BOP official's memorandum. The Eleventh Circuit has held that *Chevron* deference is to be accorded to legislative rules and agency adjudications, *not* to agency interpretations such as the one at issue in this case. *See Satellite Broad. & Comm'ns Ass'n of Am. v. Oman,* 17 F.3d 344, 346–47 (11th Cir.1994) (applying *Chevron* deference to published legislative rule after previously declining such deference to a mere policy decision).[3] The Supreme Court and several other circuits appear to concur in this approach. *See Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 1662, 146 L.Ed.2d 621 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy state-

ments, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference. They are 'entitled to respect,' but only to the extent that they are persuasive ....") (citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)); *Motor Vehicle Mfrs. Ass'n v. New York State Dep't of Env't Conservation,* 17 F.3d 521, 534–35 (2d Cir.1994) (refusing to apply *Chevron* deference to agency's interpretation of a statute put forth in an agency advisory circular); *Kelley v. E.I. DuPont de Nemours & Co.,* 17 F.3d 836, 841–42 (6th Cir.1994) (holding that lesser deference is accorded to policy statements and interpretive rulings than to legislative rules); *Travelstead v. Derwinski,* 978 F.2d 1244, 1250 (Fed.Cir.1992) (noting that only deference under *Skidmore* and not *Chevron* is appropriate for informal agency rules); *Dalheim v. KDFW–TV,* 918 F.2d 1220, 1228 & n. 39 (5th Cir.1990) (applying *Skidmore* deference to informal agency rules). Under so-called *Skidmore* deference:

> [w]e consider that the rulings, interpretations and opinions of the [agency], ... while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the va-

---

**3.** In *NBC v. Satellite Broad. Networks,* 940 F.2d 1467 (11th Cir.1991), the agency had issued a policy statement that satellite carriers did not fall within the statutory meaning of "cable systems" under § 111 of the Copyright Act. In its 1991 decision, the Eleventh Circuit rejected the agency's interpretation of the statute, finding it "unpersuasive." *Id.* at 1470 n. 4. Subsequent to that decision, the agency promulgated a formal legislative rule, complete with notice and comment, excluding

satellite carriers from the definition of "cable systems" just as it had in its previous informal policy statement. *Id.* Upon review of that regulation, the Eleventh Circuit found that in this format, the agency's rule was entitled to *Chevron* deference. 17 F.3d at 347. Although the Court was not specific about the level of deference applied to the informal rule in *NBC,* use of the term "unpersuasive" points toward a reliance on the principles set forth by the Supreme Court in *Skidmore.*

lidity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control. 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124.

Based on the evidence before this Court, the agency's interpretation of the statute in this case is not entitled to significant weight. As discussed, there are several reasons the Court finds the BOP's interpretation "unpersuasive" here. Though the BOP has presented arguably valid reasoning behind the "twelve months preceding" rule, Respondent has not shown a consistent source for the rule or even a consistent definition of the rule. It is unclear whether the rule as it exists today, wherever it may have come from and whatever it actually requires, is consistent with earlier versions of the rule or will be consistent with future versions. The application of such an additional unwritten, unpublished, and inconsistent agency interpretation cannot be given controlling weight by this Court.

Accordingly, Smith's petition for writ of habeas is hereby **GRANTED**. The Bureau of Prisons shall reconsider Smith's eligibility for admission to the Residential Drug Abuse Program using only the permissible criteria identified herein.

**SO ORDERED.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

GRAHAM, United States Magistrate Judge.

Petitioner Ralph Smith ("Smith"), an inmate currently incarcerated at the Federal Satellite Low in Jesup, Georgia ("FSL Jesup"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent filed a Return on the Court's Order to Show Cause, and Smith filed a Reply. For the following reasons, Smith's petition should be **GRANTED**.

### STATEMENT OF THE CASE

Smith is currently serving an 87-month sentence imposed by the United States District Court for the Middle District of Florida. While incarcerated at FSL Jesup, Smith applied to participate in the Bureau of Prisons' ("BOP") Residential Drug Abuse Treatment Program ("RDAP"). The BOP, however, found Smith ineligible for participation in the RDAP and denied his application. Smith requested an eligibility interview with staff and a reconsideration of his application. He eventually pursued his available administrative remedies, but the BOP maintained throughout the process that Smith was not eligible for participation in the RDAP.

In his § 2241 petition, Smith contends that the BOP's denial of his participation in the RDAP was arbitrary and an abuse of discretion. Smith asserts that documented evidence, including letters from friends, family, and a physician, indicate that he suffers from a substance abuse problem. Smith also contends that the BOP's requirement that substance abuse be documented within the twelve months preceding incarceration is impermissibly based upon a rule that has not been promulgated pursuant to the rulemaking process required by the Administrative Procedures Act ("APA").

Respondent contends that the BOP has wide discretion in the provision of substance abuse treatment, and that its determination of Smith's ineligibility is wholly within its statutory authority. Respondent also asserts that in making the determination of ineligibility, the BOP relied on no

requirements outside of the agency's Program Statement.[1]

## DISCUSSION AND CITATION TO AUTHORITY

### A. The Residential Drug Abuse Treatment Program (RDAP)

18 U.S.C. § 3621(b) requires that the Bureau of Prisons "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." This treatment program carries with it an early release component, wherein the Bureau of Prisons has discretion to reduce the sentence of an inmate by up to twelve months if the inmate was convicted of a nonviolent offense and completes an RDAP during his current confinement. 18 U.S.C. § 3621(e)(2)(B). The majority of the litigation surrounding 18 U.S.C. § 3621(b) pertains to a prisoner's eligibility for *early release* after completion of the RDAP. Conversely, the issue of eligibility for *entry* into the RDAP has resulted in very little litigation, and a review of what does exist reveals that there is simply no well-settled controlling case law on the subject.

The statute and its accompanying federal regulations indicate that the BOP has the sole authority to determine which prisoners should participate in the RDAP. Congress clearly stated that the BOP is to provide substance abuse treatment to those prisoners whom "the Bureau determines" have treatable substance abuse conditions. Federal regulations likewise indicate that the BOP has substantial discretion and authority to assign prisoners to substance abuse programs. *See* 28 C.F.R. § 550.53 (allowing BOP staff to make appropriate drug education/treatment referral following an interview and record review); 28 C.F.R. § 550.56(b) ("the decision on placement [in an RDAP] is made by the drug abuse treatment coordinator").

### B. Criteria of a "Substance Abuse Problem"

The BOP's interpretation of a statute that it is entrusted to administer is entitled to considerable weight unless it is arbitrary, capricious, or contrary to the statute. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Moreover, discretion is likewise appropriate even when "the Bureau's interpretation appears only in a 'Program Statemen[t]'— an internal guideline—rather than in 'published regulations subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment.'" *Reno v. Koray*, 515 U.S. 50, 61, 115 S.Ct. 2021, 2027, 132 L.Ed.2d 46 (1995) (citation omitted). However, despite its broad discretion over the substance abuse treatment program and similar statutorily-created programs, the BOP must act within the confines of its statutory authority in order to survive judicial review. It is clear that 18 U.S.C. § 3621(b) does not set forth any

---

**1.** Smith alleges that the BOP, in determining his eligibility, improperly relied upon the so-called "Weinman Memo," a 1996 memorandum from Beth Weinman, National RDAP Coordinator. This memo sets forth instructions to be used in conjunction with the BOP's Program Statement to substantiate an inmate's substance abuse disorder. Among other things, the instructions provide that documentation of substance abuse includes "[a]n eligibility interview that leads to a diagnostic impression of alcohol or other 'legal' substance abuse/dependence *during the last 12 months prior to arrest and/or incarceration ...*" (Doc. No. 14, p. 14 (emphasis added)). Respondent maintains that BOP staff have not relied on the Weinman Memo, and instead have utilized only the requirements of the applicable Program Statement in making eligibility determinations. (Doc. No. 8, p. 5).

criteria to guide the BOP's determination of whether an inmate has a "substance abuse problem." Thus, the question here is whether the specific criteria used by the BOP to make the determination are permissible.

BOP Program Statement 5330.10 establishes that to qualify for an RDAP, an inmate must be diagnosed with substance abuse or dependence as defined by the Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edition ("DSM–IV"). PS. 5330.10, Chapter 5, § 5.4.1. The Program Statement provides that "any written documentation in the inmate's central file which indicates the inmate used the same substance, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem." The record before this Court indicates that Smith's application to participate in the RDAP was denied because he had no documented substance abuse *within the twelve months preceding his arrest.* The BOP's Administrative Remedy Response to Smith states explicitly that "... had your PSI indicated *any* use of illicit drugs or alcohol within the 12 months preceding your arrest ... the RDAP Coordinator would have proceeded with the eligibility interview and then assessed for corroboration between drug use claimed during the interview and drug use reported in the existing documentation." (Smith Exh. 12, p. 3).

It is clear, however, that the DSM–IV, that diagnostic tool referenced in the Program Statement, requires only that a diagnosis of substance abuse or dependence be made based on the presence of symptoms *during a twelve month period.* It makes no reference to any temporal relationship between the twelve month period and the applicant's arrest or incarceration. In his response to Smith's administrative appeal, the Warden states that the DSM–IV re-quires that symptoms exist within the 12 months preceding arrest, a statement that is simply an incorrect reading of the plain language of the manual. Whatever the merits of such a "twelve months preceding" requirement may be, citing DSM–IV to justify what is clearly an unannounced, unwritten, and unpublished change in the rules will not pass muster upon close review. Accordingly, Respondent's position that the BOP relied only upon the applicable Program Statement in making the diagnosis must fail, as it is clear that the BOP improperly relied upon an additional requirement found nowhere in its policies.

### C. The BOP's Finding of Ineligibility Was an Abuse of Discretion

Ignoring, then, the improper "twelve months preceding" requirement, the BOP would be left with Smith's written documentation and his eligibility interview. Smith's PSI indicates that "[t]he Defendant has a significant history of substance abuse that began when he was approximately 23 years old," that he used marijuana, cocaine, ecstasy, LSD, and GHB on a regular basis during that time, and used anabolic steroids during 1995 and 1998. (Smith Exh. 2). Three letters from Smith's friends and family and one letter from a former physician detail his substance abuse. (Smith Exh. 3, 4, 5, and 6). In a January 2006 intake screening report, Dr. Shirley A. Terradas, Chief Psychologist at FSL Jesup, notes that Smith reported a history of substance abuse. (Smith Exh. 7). By Order dated April 24, 2006, the court that sentenced Smith recommended to the BOP that Smith be allowed to participate in the RDAP at FSL Jesup. Smith's pleadings note that an eligibility interview was conducted after his repeated requests, and the record indeed evidences that the request was granted (Smith Exh. 13, p. 3), but there is no documentation of the outcome of this inter-

view, save the BOP's subsequent denial of Smith's request for reconsideration. (Smith Exh. 14, p. 3).[2]

Having reviewed the documentation of Smith's central file, it appears that the BOP's determination that Smith was ineligible for the RDAP, based solely on an improper "twelve months preceding" requirement, was an abuse of discretion. The BOP acted arbitrarily in imposing additional requirements beyond those in its Program Statement. This Court cannot conclusively determine that absent this additional requirement, Smith's application for placement in the RDAP would have been similarly denied. Accordingly, it is **RECOMMENDED** that the instant petition for a writ of habeas corpus be **GRANTED** and the case be remanded to the Bureau of Prisons for reconsideration of Smith's eligibility for admission to the Residential Drug Abuse Program using only permissible criteria.

So **REPORTED** and **RECOMMENDED.**

Feb. 7, 2007.

---

**2.** Smith cites what appears to be the solitary case discussing the issue presented by these facts. In *Mitchell v. Andrews,* 235 F.Supp.2d 1085 (E.D.Cal.2001), the court found that the BOP abused its discretion by imposing an identical requirement for entry into the RDAP. Though not binding precedent, the Court is indeed guided by the *Mitchell* court's reasoning, as it was presented with facts very nearly identical to the facts of the case *sub judice.* The record in Mitchell established that the petitioner had a history of substance abuse. The petitioner's central file included his interview statement admitting a problem with three substances, recent declarations and affidavits about his substance problem from family members, friends, and a past employee, and the BOP's own Psychology Services records reflecting his substance abuse problem for four years preceding his application. *Id.* at 1091–1092. Based on the extent of this documentation, the *Mitchell* court found that the BOP's determination that the petitioner was ineligible based on the "twelve months preceding" requirement was arbitrary and unreasonable and an abuse of the agency's discretion. *Id.* at 1092.