**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

BRIAN LEE WILSON,

      Petitioner - Appellant,

v.

PAUL A. KASTNER, Warden,

      Respondent - Appellee.

No. 09-6060
(D.C. No. 5:08-CV-00859-HE)
(D. W.D. Okla.)

## ORDER AND JUDGMENT[*]

Before **HARTZ**, **EBEL**, and **O'BRIEN**, Circuit Judges.

      After examining the briefs and the appellate record, this panel concludes that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is submitted for decision without oral argument.

---

      [*] This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

Brian Lee Wilson, a federal prisoner appearing pro se,[1]filed a 28 U.S.C. § 2241 petition for writ of habeas corpus[2]seeking to compel Paul A. Kastner, Warden of the Federal Transfer Center in El Reno, Oklahoma, to reconsider his eligibility for enrollment in a Residential Drug Abuse Program (RDAP). The district court denied the petition; we reverse.[3]

## I.     STATUTORY OVERVIEW

Congress directed the Bureau of Prisons (BOP) to "provide residential substance abuse treatment . . . for all eligible prisoners." 18 U.S.C. § 3621(e)(1)(C). The statute defines an "eligible prisoner" as one "who is (i) determined by the Bureau of Prisons to have a substance abuse problem; and (ii) willing to participate in a residential substance abuse treatment program[.]" *Id.* § 3621(e)(5)(B). The statute establishes no criteria for determining whether an inmate has "a substance abuse problem."

The BOP adopted a regulation, which for the relevant time period reads:

An inmate must meet all of the following criteria to be eligible for the residential drug abuse treatment program.

(1)     The inmate must have a verifiable documented drug abuse

---

[1] We liberally construe Wilson's pro se filings. *See Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003).

[2] Wilson's habeas petition under § 2241 is appropriate because his challenge relates to the execution of his sentence rather than the validity of his conviction. *See Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000); *Hall v. Saffle*, 10 Fed. Appx. 768, 770 (10th Cir. 2001) (unpublished); *Miller v. Gallegos*, 125 Fed. Appx. 934, 937 (10th Cir. 2005) (unpublished). Unpublished opinions are not binding precedent. 10th Cir. R. 32.1(A). We mention these cases, and those mentioned later in this Order and Judgment, as we would opinions from another circuit, persuasive because of their reasoned analysis.

[3] We have jurisdiction to entertain this appeal. 28 U.S.C. §§ 1291, 2253(a).

problem.

      (2)     The inmate must have no serious mental impairment which would substantially interfere with or preclude full participation in the program.

      (3)     The inmate must sign an agreement acknowledging his/her program responsibility.

      (4)     Ordinarily, the inmate must be within thirty-six months of release.

      (5)     The security level of the residential program institution must be appropriate for the inmate.

28 C.F.R. § 550.56(a) (2000).[4]  In addition, the BOP issued Program Statement 5330.10

which discussed the first requirement in more detail.[5]  It stated in pertinent part:

> The inmate must have a verifiable documented drug abuse problem.  Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the *Residential Drug Abuse Program Eligibility Interview* followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information.  The inmate must meet the diagnostic criteria for substance abuse or dependence indicated in the *Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edition, (DSM-IV)* . . . .
>
> Additionally, there must be verification in the Presentence Investigation (PSI) report or other similar documents in the central file which supports the diagnosis.  Any written documentation in the inmate's central file which indicates that the inmate *used* the *same substance*, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem.

(R. Vol. I at 73-74.)  The BOP developed "an internal policy/practice" requiring a

prisoner to have "documentation . . . supporting a claim of substance abuse or

---

[4] This regulation has been amended.  The eligibility requirements are currently set forth in 28 C.F.R. § 550.53(b) (effective March 16, 2009).

[5] The version of Program Statement 5330.10 in the record, and on which we rely, is dated May 17, 1996.  On March 16, 2009, the BOP rescinded Program Statement 5330.10 and replaced it with Program Statement 5330.11.

dependence during the twelve-month period immediately preceding incarceration" in order to be eligible for RDAP. (Appellee's Br. at 2.) The BOP does not point us to any written documentation reflecting this "internal policy/practice," though it appears to have its origin in a memorandum by Regional Drug Abuse Coordinator Beth Weinman, dated October 21, 1996.[6] *See Mitchell v. Andrews*, 235 F.Supp.2d 1085, 1089 (E.D. Cal. 2001); *see* also *Smith v. Vazquez*, 491 F.Supp.2d 1165, 1170 (S.D. Ga. 2007) (describing the twelve-month-policy as "a 'practice' apparently emanating from a BOP official's memorandum"); *Rea v. Sniezek*, No. 4:06 CV 2424, 2007 WL 427038, *4 (N.D. Ohio

---

[6] The twelve-month-policy is not referenced in Program Statement 5330.10, which was in effect during the time relevant to this appeal. By contrast, its successor Program Statement 5330.11 specifically refers to the twelve-month period prior to arrest (not incarceration) as being the relevant period for determining RDAP eligibility. It states: "Upon assignment of a RDAP referral . . . the [Drug Abuse Treatment Specialist] will review an inmate's Central File and other collateral sources of documentation to determine if . . . [t]here is verification that can establish a pattern of substance abuse or dependence." PS 5330.11, § 2.5.8(d)(2). It continues:

> When seeking independent verification, examples of other collateral documentation that may be used include:
>
> - Documentation to support a substance use disorder within the 12-month period before the inmate's arrest on his or her current offense.
>
> - Documentation from a probation officer, parole officer, social service professional, etc., who has information that verifies the inmate's problem with substance(s) within the 12-month period before the inmate's arrest on his or her current offense.
>
> - Documentation from a substance abuse treatment provider or medical provider who diagnosed and treated the inmate for a substance abuse disorder within the 12-month period before the inmate's arrest on his or her current offense.

*Id*.

- 4 -

Feb. 2, 2007) (unpublished) (describing the twelve-month-policy as an "unwritten policy").

## II.     BACKGROUND

On October 29, 1999, Wilson began serving consecutive state sentences totaling 25 years. In August 2000, he pled guilty to a federal grand jury indictment charging him with mail fraud and was sentenced to 42 months imprisonment. Wilson completed his state sentences on July 17, 2007, and was transferred from the Oklahoma Department of Corrections (ODOC) to the custody of the United States Marshal Service to begin serving his federal sentence.[7] The BOP conducted a psychological intake screening of Wilson on October 12, 2007. At that time, Wilson did not report a history of substance abuse or express an interest in participating in a substance abuse treatment program. Wilson later expressed such an interest.

Dr. Y. Tami Yunez interviewed Wilson twice to determine whether he was eligible for RDAP. Based on these interviews and a review of available documentation, she determined Wilson met the diagnostic criteria for cannabis, amphetamine and sedative abuse while he was serving his state sentences, but not during the twelve-month period prior to his state incarceration. She concluded Wilson was not eligible for RDAP but was eligible to participate in a Non-Residential Drug Abuse Treatment Program (NRDAP).

On August 18, 2008, Wilson filed this § 2241 petition seeking an order directing the BOP to reconsider his RDAP eligibility. He claims: (1) the BOP exceeded its

---

[7] Wilson's projected release date is August 5, 2010.

statutory authority by categorically excluding from RDAP inmates who do not have documentation of abuse during the twelve-month period prior to incarceration; and (2) the BOP cannot look to the twelve-month period prior to incarceration to determine RDAP eligibility because the BOP did not promulgate this "rule" in accordance with the requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 553.

In response to Wilson's petition, the BOP argued Wilson was not eligible for RDAP because he did not have a verifiable documented history of substance abuse during the twelve-month period prior to incarceration. It explained:

> [B]ecause incarceration is an artificial environment, unlike the community, the BOP routinely evaluates the inmate's frequency of drug use and diagnostic data utilizing the 12-month period prior to incarceration, including state incarceration. Accordingly, to satisfy the DSM-IV, there must be evidence corroborating an inmate's substance abuse while he was residing in the community, and not when he is in a more controlled and yet artificial environment such as incarceration.

(R. Vol. I at 96.) The BOP provided no other justification for its twelve-month-policy; nor did it argue Wilson was ineligible to participate in RDAP for some other reason. And it did not address Wilson's argument that it could not rely on the twelve-month-policy because the rule was not promulgated in the manner required by the APA.

The petition was referred to a magistrate judge who issued a report recommending Wilson's petition be denied because the BOP's policy of looking at the twelve-month period prior to incarceration to determine RDAP eligibility was entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and *Lopez v. Davis*, 531 U.S. 230 (2001), and was "a reasonable interpretation of the

statute."[8]  (R. Vol. I at 130.)  She explained:

> Because the DSM-IV dictates that diagnosis of substance abuse is dependent upon the existence of certain symptoms during a twelve-month period and that remission is dependent upon the absence of those symptoms for a twelve-month period unless the subject is in a "controlled environment," it is reasonable for the BOP to look to the twelve-month period before a prisoner is incarcerated to determine whether the prisoner exhibited the symptoms signaling drug abuse.

(*Id.*)  The magistrate did not address Wilson's APA argument.

Wilson filed written objections to the Report and Recommendation.  The district judge adopted it over his objections and entered judgment in favor of the Warden.  The judge observed: "[Wilson's] participation in the [Non-Residential Drug Abuse Program] provides the potential for the same relief as sought by the writ.  If, while in the NRDAP, BOP personnel determine [he] requires more intensive treatment, he can then be referred to the residential program." (*Id.* at 143.)  Wilson filed a timely notice of appeal.  The district court permitted Wilson to proceed *in forma pauperis* (*ifp*) on appeal.[9]

### III.    DISCUSSION

Wilson now continues the arguments he made to the district court.  He contends the BOP's use of the twelve-month period prior to incarceration to determine eligibility for RDAP is not a permissible exercise of its discretion in carrying out its obligation to provide substance abuse treatment as required by 18 U.S.C. § 3621(e)(1)(C).  He also

---

[8] The magistrate acknowledged three federal district courts had found the BOP's interpretation of the statute wanting.

[9] Wilson filed a renewed motion with this Court.  That motion was unnecessary because the district court had already granted the requested relief.  Accordingly, we do not address it here.

contends the BOP cannot rely on its twelve-month-policy because it did not properly promulgate the "rule." The BOP argues it acted within its discretion in using the twelve-month period prior to incarceration to determine RDAP eligibility. Once again, it does not address Wilson's argument under the APA. In § 2241 habeas proceedings, we review legal questions de novo and factual findings for clear error. *See United States v. Eccleston*, 521 F.3d 1249, 1253 (10th Cir. 2008).

"[W]e may not review whether the BOP erred in [Wilson's] particular case, but may only review whether the BOP exceeded its statutory authority in construing [the statute]." *Hunnicutt v. Hawk*, 229 F.3d 997, 1000 (10th Cir. 2000). Wilson contends the BOP's twelve-month-policy "is not entitled to deference because [it] appears nowhere in a published [form]. It is merely a practice." (Appellant's Opening Br. at 6.) Whether *Chevron* deference is appropriate is a legal question we review de novo. *See Eccleston*, 521 F.3d at 1253.

In *Chevron*, the Supreme Court said:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 842-43 (footnotes omitted). The statute here offers no guidance as to how

BOP is to determine whether a prisoner has a "substance abuse problem." Instead, it expressly delegates that determination to the BOP. In that regard *Chevron* instructs: "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute *by regulation*." *Id.* at 843-44 (emphasis added). We are to afford "controlling weight" to the agency's "*legislative regulations* . . . unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844 (emphasis added).

If the BOP's twelve-month-policy was contained in a regulation, it would be entitled to *Chevron* deference. *See Via Christi Reg'l Med. Ctr. v. Leavitt*, 509 F.3d 1259, 1271-72 (10th Cir. 2007). Thus, in *Lopez*, the Supreme Court held a BOP regulation relating to post-RDAP eligibility for early release was "a permissible exercise of the Bureau's discretion . . . ." 531 U.S. at 233. *Lopez* is inapposite here because the twelve-month-policy is not contained in a regulation.[10]

The BOP contends its twelve-month-policy is entitled to deference "even though [it] appears only in a Program Statement . . . ." (Appellee's Br. at 16 (quotations omitted).) The BOP is correct to some extent; a Program Statement is entitled to "some deference" if it represents a permissible construction of the statute. *Reno v. Koray*, 515 U.S. 50, 61 (1995). However, the twelve-month-policy is not contained in a Program

---

[10] Some courts, including the district court here, have blessed the BOP's twelve-month-policy. Those courts have improperly relied upon *Lopez* to accord *Chevron* deference to a mere policy. *See, e.g.*, *Rea v. Sniezek*, No. 4:06 CV 2424, 2007 WL 427038, *5 (N.D. Ohio Feb. 2, 2007) (unpublished); *Montilla v. Nash*, No. CIVA 05-2474, 2006 WL 1806414, *3 (D.N.J. June 28, 2006) (unpublished).

Statement but is instead merely a policy or practice (perhaps not even formally adopted). *See Laws v. Barron*, 348 F.Supp.2d 795, 804 (E.D. Ky. 2004) ("It is true that in none of the provisions in the statute, the regulation, or the program statement, nor in the DSM-IV which is referenced therein, does the requirement appear . . . that the documented abuse must be in the 12-month period immediately preceding a diagnostic interview, arrest, or incarceration.").

While the BOP is accorded broad discretion over all aspects of the substance abuse treatment program, it must exercise its discretion within the prescribed parameters of its statutory authority. *See SEC v. Sloan*, 436 U.S. 103, 118 (1978) (court must determine whether agency's exercise of discretion is within the scope of its statutory authority); *see also Downey v. Crabtree*, 100 F.3d 662, 666 (9th Cir. 1996) ("[T]he Bureau's endowment of broad discretion does not immunize its decisions from judicial review, especially concerning questions of statutory interpretation."). We do not afford *Chevron* deference to agency pronouncements which lack the force of law. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference."); *Via Christi Reg'l Med. Ctr., Inc.*, 509 F.3d at 1272 (same).

We will, however, afford the BOP a lesser form of deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). As the Supreme Court explained in *United States v. Mead Corp.*, "*Chevron* did nothing to eliminate *Skidmore*'s holding that an agency's interpretation may merit some deference whatever its form, given the specialized

- 10 -

experience and broader investigations and information available to the agency and given the value of uniformity in its administrative and judicial understandings of what a national law requires." 533 U.S. 218, 234 (2001) (quotations and citations omitted). Applying *Skidmore* deference, we afford weight to an agency's decision "depend[ing] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Skidmore*, 323 U.S. at 140; *see also Via Christi Reg'l Med. Ctr., Inc.*, 509 F.3d at 1272.

The question, then, is whether the BOP's twelve-month-policy has the "power to persuade." It does not. The BOP contends the rule is based on the DSM-IV, saying: "The DSM-IV suggests that if during the twelve months used as the review period, the patient is in a controlled environment (such as prison) then the diagnosis and treatment may be skewed by the artificial environment." (Appellee's Br. at 12-13.) Admittedly, the DSM-IV is a principled source and we accept its guidance with respect to a potentially skewed diagnosis. The problem lies in the BOP's interpretation of the principles announced. It confuses the criteria for making a substance abuse diagnosis with criteria designed to avoid prematurely, and potentially erroneously, concluding a documented substance abuse problem is in remission.

The DSM-IV defines "Substance Dependence" as "[a] maladaptive pattern of substance use, leading to clinically significant impairment or distress, as manifested by three (or more) of" a cluster of certain listed symptoms occurring at any time in the same twelve-month period. DSM-IV-TR at 197. "Substance Abuse" is similarly defined. *Id*.

- 11 -

at 199. It does not specifically define the twelve-month period to be used for a substance abuse diagnosis. *See Mitchell*, 235 F. Supp. 2d at 1090 ("The DSM-IV does not require documentation of substance abuse or dependency during the 12-month period immediately preceding either a diagnostic interview, arrest, or incarceration."). The DSM-IV also discusses remission of a substance abuse problem and provides different diagnostic criteria for "Early Remission" when the subjects are in a controlled environment. It defines "Early Remission" as "the first 12-months following Dependence or Abuse." *See* DSM-IV-TR at 195. It states: "For an individual to qualify for Early Remission after . . . *release* from a controlled environment, there must be a 1-month period in which none of the criteria for Dependence or Abuse are met." *Id.* at 196 (emphasis added). Examples of a controlled environment include "closely supervised and substance-free jails, therapeutic communities, or locked hospital units." *Id.* at 197. The DSM-IV says nothing about "Early Remission" in subjects who continue to reside in a controlled environment.

The DSM-IV's differential method of assessing an apparent remission of symptoms of substance abuse by individuals in controlled environments clearly assumed they do not have access (or at least easy access) to addictive substances while in that environment. Accordingly, their resistance to relapse cannot be measured in the same way as one without such constraints (and who is, instead, regularly subject to temptations from corrupting peers and more readily available substances of abuse). Individuals in controlled environments, including prison, should not be considered to be in Early Remission (and thus lacking a current "verifiable documented drug abuse problem," *see*

- 12 -

28 C.F.R. § 550.56(a)(1)(2000), until they have demonstrated their resistance in a non-controlled environment for at least 30 days. But the BOP's argument (that individuals like Wilson, who develop a substance abuse problem while in prison, do not warrant a diagnosis of Substance Dependence or Abuse) turns the logical thread of the DSM-IV on its head. Any diagnostic skewing caused by the controlled environment of prison would relate only to mistakenly identifying an inmate in remission. The absence of credible evidence of "Early Remission" in a documented case of substance abuse cannot logically or reasonably suggest an inmate has no current substance abuse problem.

In the conclusion of its appellate brief, without citing any authority, the BOP argues: "Allowing prisoner's [*sic*] to gain eligibility for the RDAP and its incentive for . . . the possibility of as much as a one year reduction [of] the term of incarceration,[11] without any time period of evaluation or the use of a time period running during the artificial and controlled environment of a prison, is [to] invite abuse of the program." (Appellee's Br. at 18.) The opportunity for secondary gain is palpable and the BOP must attempt to separate the wheat from the chaff.

The problem, however, is that the statute refers to a current, not a past, substance abuse problem and the BOP's policies must be directed at identifying those prisoners with a current substance abuse problem. Moreover, the BOP did not raise this argument before the district court and we do not generally consider arguments raised for the first

---

[11] *See* 18 U.S.C. § 3621(e)(2)(B).

time on appeal.[12]  *See Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 156 (1991) ("Our decisions indicate that agency 'litigating positions' are not entitled to deference when they are merely appellate counsel's '*post hoc* rationalizations' for agency action, advanced for the first time in the reviewing court.").[13]

Some of the district courts that have upheld the BOP's twelve-month-policy have concluded the rule is reasonable because it focuses attention on the period immediately preceding arrest or incarceration, rather than on some earlier time period.  For example, in *Laws*, the petitioner claimed he was eligible to participate in RDAP based on alcohol abuse which occurred four to nine years before he was arrested.  348 F.Supp.2d at 797. The district court denied the petition explaining:

> The requirement that the abuse occurred in the 12-month pre-incarceration
> period of time is explained as consistent with the DSM-IV definition of
> substance abuse.  Again, common sense would dictate that entry into the
> most rigorous program would be restricted to those prisoners having a
> recent history of abuse, rather than one who can demonstrate that he had a
> substance abuse problem 4 to 9 years prior to arrest and 7 to 12 years prior
> to incarceration.

----

[12] "We are free to affirm the rulings of a district court on any ground that finds support in the record . . ."  *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1248 (10th Cir. 2000) (quotations omitted).  Though we are inclined to defer to the BOP, the record here does not contain any evidence that its policy of looking to the twelve-month period prior to incarceration to determine substance abuse reduces abuse of RDAP.

[13] Similarly, 18 U.S.C. § 3621(e)(3)(B) requires BOP to provide an annual report to Committees on the Judiciary of the Senate and the House of Representatives including "a full explanation of how eligibility for [substance abuse treatment] programs is determined . . . ."  We recognize "[w]here an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned."  *North Haven Bd. of Educ. V. Bell*, 456 U.S. 512, 535 (1982).  BOP has not advanced this argument and we decline to consider it *sua sponte*.

*Id.* at 805-06 (quotations and citation omitted); *see also Dellarcirprete v. Gutierrez*, 479 F. Supp. 2d 600, 605-06 (N.D. W.Va. 2007) (concluding the BOP's practice of looking to the twelve-month period prior to incarceration to determine RDAP eligibility is reasonable assuming such period would be the twelve months immediately preceding incarceration).

This same reasoning supports Wilson's argument here. If the twelve-month-policy is reasonable when applied to exclude inmates who lack evidence of recent substance abuse, it should not exclude inmates who have evidence of recent abuse merely because that substance abuse occurred during a period of incarceration. Had Wilson's abuse occurred prior to his state incarceration (before October 29, 1999), he would presumably have been less in need of treatment at the beginning of his federal incarceration (July 17, 2007) due to the passage of time in a drug and alcohol free environment.

The BOP may have a legitimate reason for being less tolerant of prisoners who develop a substance abuse problem while incarcerated and for requiring them to participate in a non-residential program before moving to a residential one,[14] the BOP does not make those arguments in this case.[15] Considering the arguments the BOP does

---

[14] The district judge implied (*infra* at 6) that judicious use of the Non-Residential program might be part of the sifting process. Curiously, BOP has not made that argument here. Rather than speculate, we assume that was a reasoned choice.

[15] The statute's directive that the BOP provide residential substance abuse treatment to every prisoner with a substance abuse problem must be considered in the penetrating light of reality. This directive is, by its terms, "subject to the availability of appropriations." 18 U.S.C. § 3621(e)(1). The BOP must allocate available resources in a

make, we are not persuaded its twelve-month-policy is a reasonable exercise of discretion under 18 U.S.C. § 3621(e)(1) when categorically applied to inmates such as Wilson.[16]

We **REVERSE** the district court's denial of Wilson's petition for habeas relief and **REMAND** the case to the district court with instructions to issue a writ requiring the BOP to reconsider Wilson's RDAP eligibility.[17]

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

manner best suited to implement Congressional intent; that necessarily calls for an exercise of discretion. Perhaps BOP's challenged policy is a product of fiscal reality, but it has not been rationally explained—either here or in the district court.

[16] Because we conclude the twelve-month-policy is not a reasonable exercise of the BOP's discretion and Wilson is entitled to the relief he seeks, we decline to consider Wilson's argument that the BOP cannot rely upon the twelve-month-policy because it was not promulgated in accordance with the requirements of the APA.

[17] In reconsidering his eligibility, the BOP might determine Wilson is ineligible to participate in RDAP for some other reason.